The case that we're calling now is 19-1294 Hayes v. Skywest Airlines. Counsel Port Pellin, if you'd make your appearance and then proceed. Thank you, Judge Holmes. My name is Marcy Glenn and I represent Skywest Airlines. It's not an exaggeration to say that the trial in this case went off the rails. It gives me no pleasure today to delve into the district court's mishandling of the incidents that occurred during this trial. But Skywest was entitled to a fair trial. Instead, it received the judge's scorn and repeated attacks in the presence of the jury, and there is no way that the verdict was unaffected. There's no question that the district court needed to address both incidents at trial. First, the improper gesture made by Ms. Rutledge, the paralegal for Skywest's trial counsel. And second, a juror's start of a conversation with Ms. Sorenson, who was Skywest's human resources director, its corporate representative at trial, and a key witness. And a conversation in which Ms. Sorenson engaged with her. It wasn't just the juror talking at her, right? Yes, that's correct. The issue is how the court addressed those incidents. And the court had many tools for doing so. And it appropriately used some of them outside the jury's presence and in a manner that did not prejudice the jury in any way against either party. But I'm more concerned here with the prejudice against Skywest. It did things like determining whether Ms. Sorenson or any juror saw Ms. Rutledge's gesture, examining Ms. Sorenson and the juror about the elevator conversation, dismissing Ms. Rutledge and the juror, charging them both with contempt, and rebuking everyone involved. Ms. Rutledge, Ms. Sorenson, and the juror. It did all of that outside the presence of the jury. And we are not here to complain about those actions. But the court had duties to exercise its inherent powers to manage the proceeding with restraint and with discretion. And the primary duty that the court had was to ensure that the jury remained untainted by any information outside of the evidence in the case. At the outset, I need to address the argument that Skywest was the wrongdoer, and therefore it shouldn't be in a position to take advantage of a mistrial. Let's assume that Ms. Rutledge's gesture was improper. It clearly was. And that her misconduct should be imputed to Skywest, which we don't agree. But let's assume that it should be. And let's also assume that Ms. Sorenson acted wrongfully when she responded briefly to the juror's comments in the elevator. Which, again, we don't concede. But even with those assumptions, neither of the underlying incidents significantly disrupted the trial from the juror's perspective. No juror saw Ms. Rutledge's gesture. And no juror, other than the juror on the elevator, was aware of the conversation. The meaningful disruption and the basis for a new trial occurred when the court condemned and punished Ms. Rutledge, the juror, Ms. Sorenson, and Skywest in the jury's presence. Counsel, why didn't you guys object contemporaneously? It seemed to me from the record that what you did was when the court was proposing to do this, Skywest counsel said, you're in the best position to know what's right. We agree it was wrong. You do what you need to do to make it right. And they didn't immediately, I mean, even after he admonished the jury as to these things, he didn't immediately, your trial counsel didn't immediately bring it up to the court in a bench conference or someplace that he had tainted the jury and that they needed a mistrial. Judge Carson, Skywest believes that the issue was preserved, but we agree that the record is not as clean as we wish it were. The reason for the preservation requirement is so that the district court judge has an opportunity to address issues before the parties come to this court. And here the issues were front and center. It's true that after the Rutledge incident, our counsel did say, the court needs to look into this and we leave this to the court's discretion to handle it appropriately. That was not in any way a waiver of a challenge once the court handled it inappropriately. When was the objection made then after the court had, with respect to the first incident? There was nothing further said after the first incident. It was only the comment before the court spoke to the jury when Skywest both said that we asked the court to exercise its discretion and made very clear that Skywest's paramount interest was ensuring that it was not prejudiced by anything that was said to the jury. So we believe that that was adequate. I think the more important question concerns the second incident. Once that occurred, I think it's a fair question, how did we preserve the issue? We relied, we did move for a mistrial, but the fact is the mistrial motion came before the court even told us what it was going to say to the jury, much less did that. I need to emphasize that by that point in time, right after the Rutledge incident, the court had said, I wouldn't grant you a mistrial because of this if you asked for it. We had not. I mean, lawyers have to be big folks and they have to object if they need to object. And so in the first instance, it may not have been a waiver, but I'm not sure why it wouldn't be a forfeiture. I mean, the counsel just remained silent when that advisement took place. And then the second incident, as you candidly and appropriately point out, there was an objection for mistrial, but it was to the act of, it was not to the advisement. And it's the advisement that you're on appeal here complaining about. So why isn't that a forfeiture as it relates to the second incident as well? Well, we believe that the court's vehement, immediate, and summary denial of the mistrial motion that was made was a clear signal that any further mistrial motion would have been futile. The court will decide whether it agrees with that. And if it does not agree, we would argue that the errors in this case were so significant, so plain, and had such a detrimental effect on SkyWest as to constitute plain error. So counsel, when did you first object to the manner in which the court admonished the jury as to the juror and your corporate representative being dismissed? There was no further objection at that point. Returning to the incident and why it was... So based on what you said before, I guess what you're saying is that would have been futile. Yes, that is our position, that we had raised the issue. You have to understand that I wasn't there, but I have read the transcript, and I've spoken to the lawyers and people who were. And the courtroom was en fuego at that moment. The judge was irate. The judge had slammed the first mistrial motion that was filed, had just immediately denied it in the strongest terms. And SkyWest's desire at that point was to get past this as best as it could. The incident was squarely in front of the court. Everybody was discussing it for pages and pages of transcript. So there was no question but that SkyWest's position that the jury should not be prejudiced was before the court. But in any event, as I said, we believe it was plain error. And the reason that we believe it was plain error focuses on three aspects of what the court did. First, the reference to contempt proceedings against Ms. Sorensen and the judge's statement about that to the jury. We don't believe Ms. Sorensen engaged in contempt. Far from violating an order directed to her, she did her best to follow and help enforce the court's admonitions to the jury by ending the conversation as soon as she could get off the elevator, immediately reporting the incident to SkyWest counsel, and then to the court. But even if reasonable minds could disagree about that, when the court advised the jury, no charges for indirect contempt had been filed. Indirect contempt hadn't been established, much less beyond a reasonable doubt, and ultimately the court on its own dismissed the contempt charges that it later did file. Even more to the point, there was no reason whatsoever for the jury to know anything about the court's intention to charge Ms. Sorensen with contempt. As I indicated earlier, that was well within the court's discretion to do, to file those charges, but not to tell the jury about it. Are you aware of any case law that deals with something very similar to this, where maybe a court admonished the jury that they dismissed somebody and they were going to be held in contempt, or maybe even on the record a court held somebody in contempt or told them they were going to, in a way that the party felt prejudiced them? Are you aware of any case law like that? Yes, and we've cited cases like that in our opening brief. The Williams case, the Hawley case, I believe. Now, some of those cases, most of them are criminal cases, and what happens in those cases is the courts say, yes, this was improper, the reference to contempt was improper. But in most of those cases, the court finds that the defendant in that case was not prejudiced, so it doesn't reverse. In several cases, not involving contempt, but involving other issues, the court did reverse because it just found that the prejudice to the party was too great, including to criminal defendants. None of the court statements reflected on the merits of the case. They didn't discredit counsel? Well, they discredited Sky West's lead witness and corporate representative at trial, so I do believe that they reflected on the merits in that sense. Well, that's a pretty good reach to suggest that an obvious trial impropriety cannot be counseled against. And when you say, leave the courtroom, I'm going to hold you in contempt, that does nothing about the merits of the case or the lawyers that were involved. And yet courts have held that those kinds of comments are indeed improper. Of course, here there were more than comments. There was the expulsion of Ms. Sorenson, who had to have been perceived by the jury as such a reprobate that she wasn't even permitted to remain in the courtroom. Aside from the negative result, what's your evidence of prejudice? I'm happy to talk about prejudice. And the prejudice was immediate and it was very real. This was already a David and Goliath case, involving a sympathetic individual pitted against an impersonal large corporation. Ms. Sorenson was quite literally the human face of SkyWest Airlines, seated at counsel table, introduced as its representative. She spent a great deal of time on the witness stand. She was SkyWest's last major witness, and she covered a number of issues that were sharply disputed in the case. So her credibility and SkyWest's credibility was central to this case. The through line of the plaintiff's case, all the way through Mr. Maxson's closing argument, was that SkyWest's managers, including Ms. Sorenson, because she was a recipient witness as well as the representative at trial, was that SkyWest's managers were not credible regarding their decisions in this case, SkyWest's operations and plaintiff's employment. And so, as I said, her credibility was central. And I do believe that that is part of the merits of the case. Despite that, the court intimated to the jury that she had committed a criminal act. He didn't use the word criminal contempt, but that's what most people associate with the notion of contempt, and that those were the charges that he filed. He inaccurately told the jury that she discussed the merits of the case with a juror, leaving the jury to assume the worst. The question is, what do you mean by merits? I mean, she commented on her performance as a witness, and I don't know why that doesn't go towards the merits. Her performance as a witness relates to the merits, right? She said, thank you. That is true. I think she said, I'm trying to keep it concise and that kind of thing. That's true. Okay. But even if you assume it was wrong, it wasn't information that the jury needed to know. Significantly, the court did not advise the jury that Ms. Sorensen was innocent because no contempt charges had been filed at that point or proved. It didn't describe the circumstances. It didn't disclose that she promptly reported the conversation to the court and had nothing to hide. I'd like to save my last 50 seconds, if I may, for rebuttal. That's fine. Thank you. May it please the court. Paul Maxson appearing on behalf of FLA John Hayes. SkyWest is not entitled to a new trial based on the court's handling of the company's own acts of misconduct. This is reviewed for plain error. Unless a mistrial motion is immediate and specific as to its basis, plain error review applies. SkyWest's mistrial motion during trial was only related to the conversation with the juror, not objections of members of the defense team or explanations to the jury because SkyWest did not immediately move for a new trial on the basis on which it now speaks one plain error review applies. However, under any standard, there was no error in how the court addressed SkyWest's repeated misconduct based on three cases, U.S. v. Allen, U.S. v. Jackson, and Hayes 1. In Allen, the Supreme Court held that trial courts may handle disruptive defendants by one, binding and gagging in the jury's presence. Two, contempt citations, or three, removal from the courtroom. The trial court's actions were explicitly permitted under Allen. In Jackson, the Eighth Circuit held that a mistrial was not warranted when a judge threatened counsel with contempt in the jury's presence. That was because the conduct did not suggest to the jury that the court had predetermined any evidentiary issue, nor did the court here suggest to the jury that it had predetermined any evidentiary issue. Under Jackson, there is no error. In Hayes 1, a different panel of this court affirmed the contempt citation of SkyWest Paralegal, and in that decision, this court credited the trial court's action finding that SkyWest's misconduct required the remedial steps taken by the court, including specifically polling the jury. When considered in the context of the principle that a party cannot profit from its own misconduct by creating its own mistrial, these three cases conclusively established that there was no error here. In addition, I'd like to point the court to the Hawley case cited in our brief. There, no mistrial was warranted even though defense counsel was arrested in the jury's presence because the evidence had so strongly supported the verdict. In the Williams case, there was a finding of contempt in the jury's presence, and no mistrial was granted because the judge's statements to the jury did not indicate that it had predetermined some evidentiary issue. As Judge Kelly noted, the salient question is whether or not the court's advisements to the jury suggested that the jury had to decide in a certain way that the defendant was liable or that the evidence had to be decided in a certain way. None of that happened here. Those were the holdings of the Elbay and Jackson cases. In Elbay, a mistrial was granted because when charging the jury, the court said, in essence, that the defendant was guilty. And in Jackson, there was no mistrial because threatening the defense counsel with contempt in the jury's presence did not suggest to the court that the jury had predetermined any evidentiary issue. Surely that cannot be the only issue. I mean, the reality is if, in fact, what the court did painted Ms. Sorensen, who was a key witness for SkyWest, as being untrustworthy and a wrongdoer, that could conceivably prejudice SkyWest. I mean, it can't be just whether it affects the substance of the matter, whether the jury should rule in a certain way. It has to go towards whether you put SkyWest in such an unfair light that it can't get a jury, right? I mean, Rule 4.3 talks about prejudice related to such matters. Why isn't that applicable here? A couple reasons, Your Honor. First is the Jackson and Neldae cases suggest that it is the evidentiary commentary that is salient. Did you just tell me Jackson was an Eighth Circuit case? Yes. Well, that's not our law. So, I mean, that's not dispositive of anything. Go ahead, please. Your Honor, furthermore, SkyWest had no credibility remaining at this time in the trial. If the court has not had the opportunity to do so, I ask that it please look closely at the record citations in footnote 10 of our brief, where SkyWest decision-makers were impeached over 20 times with prior inconsistent testimony regarding their actions against Mr. Hayes. No reasonable objective of juror could have viewed those multiple impeachments of SkyWest and reach any other conclusion than the jury did. In addition, I ask that the court please review pages 7 through 9 of our brief where we lay out in plain detail SkyWest's indefensible actions against Mr. Hayes, such as choosing somebody else for a safety supervisor position above Mr. Hayes, even though the other candidate had been issued a citation for bringing a knife to an airport. Again, no reasonable juror could have seen and heard this testimony and concluded that's anything other than the jury did here, that SkyWest had discriminated and retaliated against Mr. Hayes. Let me stop there. Let's talk about what I view as maybe some unintended consequences of the district court's action. And I think Ms. Glynn has sort of made a cumulative error-type argument to us in this case. And I'm wondering if the manner, although I don't think he intended to do so, if the manner in which the district court addressed the issues with the paralegal and then with the corporate representative didn't unfairly give the impression to the jury that SkyWest was trying to illegally or unethically influence the outcome of the proceeding, shouldn't he have been on guard for that when he was making these admonitions? I mean, couldn't that be plain error? That's not plain error based on the cases I cite. And SkyWest's paralegal was illegally and unethically trying to influence the proceedings she was convicted. But I will also say that during Appellant's argument, she argued that Ms. Sorensen was the face of SkyWest during trial and her credibility was enormously important. Then Ms. Sorensen should not have lied during her testimony. She explicitly lied during her testimony regarding why Mr. Hayes was not selected for the Denver pilot recruiter position. I mean, she's not been convicted or even charged with perjuring herself, has she? No, but she said during her testimony that Mr. Hayes was not selected for the Denver pilot recruiter position because he was not based in Denver. That's totally untrue. Maybe it was a mistake. Perhaps it was a mistake, but SkyWest... Again, please review the 20 impeachments of SkyWest's witnesses in footnote 10 and please review her testimony on this issue. There was no credibility left to determine. And I direct the court to the Hawley case. In that case, even though defense counsel was arrested in the jury's presence, no mistrial was granted because the evidence was so overwhelmingly in the defendant's favor. In this case, for example, in its opening brief, SkyWest offers no argument regarding why the retaliation verdict was wrong. There's no argument that the jury would have reached any other result on liability regarding retaliation. So why should we overturn a jury's verdict based on substantial evidence that SkyWest does not challenge in its opening brief, based on unpreserved arguments raised for SkyWest on the first time on appeal regarding how the court handled SkyWest's own acts of misconduct? I mean, I think there are... They couldn't just... No matter what the evidence was, that after the district court finished working them over in front of the jury, there was no way they could win. Well, two things. One, I disagree with that based on the evidence I cited, but it's important to note that the court's actions were absolutely necessary in order to preserve the integrity of the proceedings. Regarding the Sorensen incident, this involved a party speaking with a juror, talking about her testimony in explicit violation of the court's repeated orders. How is that substantially different than the Day case? I mean, I read the Day case as being equally bad, where the first, the juror addresses the agent and says, hey, I'm about to fall asleep in there, and he says something to the effect of, if you think that's bad, wait until you hear the audio evidence that's getting ready to go on. I mean, that's a direct comment on the evidence. The Day case denied a mistrial based on that. The Day case did not address what actions a court may take short of a mistrial in order to stymie the defendant's misconduct. The important point here is Sky West engaged in a conversation with the juror. In order to allow the case to proceed, in order to stop Sky West's further actions designed to undermine this trial, the court had to impress upon the parties and impress upon the jury the importance of avoiding contact with one another. And as evidenced by the fact that Sky West's in-house counsel approached a juror after trial and expressed violation again of the court's admonition that counsel not discuss the case with juror, there was a very real risk of further misconduct by Sky West. And the jurors had to be informed of the seriousness of that misconduct and of the possible consequences that would result if they did not heed the court's instructions. And I think it's entirely reasonable to conclude that the only reason that the court found out about Sky West's second act of impermissibly contacting a juror was because the court had issued such strongly worded admonitions in response to Ms. Soroson's clear violation of its admonition against juror contact. Let me fast forward to the issue of front pay. And in this instance, front pay was awarded measured by the lost job opportunity as it relates to simplicity. Are you aware, I know there are some cases that have, well, are you aware of any front pay cases that have done that? I know there's some back pay cases that have considered third party opportunities. Are you aware of any front pay cases that we missed? And more specifically, just to be clear, we, the 10th Circuit, have never ruled on that issue. So those two questions, any front pay cases at all, and two, have we ruled on it? Yeah, in the Weaver case cited in our brief, that court held that front pay could be awarded based on a lost opportunity with a third party. It was not in that instance awarded for other reasons, but it said that the legal theory was valid. What circuit is that from? I believe the Weaver is 9th Circuit, Your Honor. It's not a 10th Circuit case. I will say I don't believe there's a 10th Circuit case on point, but I do not believe that the distinction between back pay and front pay is salient in this instance. This court has repeatedly recognized that because front pay necessarily requires the court to predict the future, it is more lenient in allowing front pay and that the risk of uncertainty is borne by the party who engaged in the discrimination, in this case, Sky West. Given that leniency in front pay awards, the Seinbach and Nasser cases, which permitted front pay awards in the back pay context, should permit it in the front pay context where this court has allowed more leniency because of the predictive nature of a front pay award. If I may... Oh, was there a question? No, please proceed. If I may turn for a moment to Sky West's argument based on alleged newly discovered evidence. Sky West waived key arguments. Its opening brief contains no argument that the alleged new evidence was material to the jury's finding that the company retaliated against Mr. Hayes. Because Sky West has waived any argument that the alleged newly discovered evidence would have changed the jury's finding of liability for retaliation, Sky West is not entitled to a new trial there. In addition, Sky West did not preserve two of the three issues regarding Hayes' medical leave from Signature Airline and because of his transplant by failing to raise them in the trial court. But they did argue for plain error in their reply brief, right, as it relates to the signature matter? Yes, and it's within the court's discretion whether or not to consider that given they didn't argue plain error in their opening brief. In addition to error, there is no error in denying a new trial based on alleged newly discovered evidence. First, evidence regarding Mr. Hayes' health after he worked at Sky West was immaterial to the verdict. As the trial court properly found the verdicts were based on Sky West refusing to place Mr. Hayes in physically unstrenuous positions, Sky West's argument for a new trial is based on medical leaves he took from physically strenuous physicians with subsequent employers. Additionally, Sky West was not diligent in discovering the evidence that it now seeks a new trial based on. In moving to reopen discovery after trial, Sky West explicitly represented to the court that it had not previously sought discovery regarding plaintiff's post-trial employment and or employment opportunities. Sky West continued claiming that it had no opportunity to question plaintiff on such issues as his efforts to secure replacement employment, any employment restrictions or limitations relating to his physical health  How long of a deposition did they take of your client? All day, Your Honor. Just for the court's information, that was on page 224 of the appendix. There were no legal errors alleged in this case. There was no evidence that was improperly admitted, no improper jury instructions. Sky West's only argument for a new trial is based on the court's discretionary actions addressing the company's multiple acts of misconduct in managing the discovery process. The trial court properly exercises discretion and I ask that this court please affirm. Thank you. Thank you, Counsel. Thank you. First, quickly on front pay. The Weaver case is from the 11th Circuit and it's a 1991 case. There hasn't been anything since then that we're aware of that similarly even considers that front pay could be worded on the theory that the plaintiffs are offering here. The difference between this case is turning back to the first issue. The difference between this case and the cases that Mr. Maxson cited, Allen, Jackson, is that in those cases the litigant was disrupted in the courtroom and caused the disruption. The point here is that incidents occurred. The district court did not cause them. It had good reason to deal with them  It was the way the court dealt with those incidents that disrupted the trial. That was the abuse of discretion. As far as the Hayes 1 case, we're not objecting to polling the jury after the Rutledge incident. That's not where the prejudice arose in this case. My time is up unless the court has questions. No, thank you.